UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| CITIZENS BANK | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 11-219-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| PLASTICWARE, LLC, | ) | **&** |
| | ) | **ORDER** |
| SANFORD SAMUEL METH, individually, | ) | |
| | ) | |
| MORDACHAI NEUSTEIN, individually, | ) | |
| | ) | |
| SHEFA INDUSTRIES, LLC, | ) | |
| | ) | |
| ADEL ASSETS, LLC, | ) | |
| | ) | |
| SHIFRA HOLDINGS, LLC, | ) | |
| | ) | |
| PHILMET CAPITAL GROUP, LLC, | ) | |
| | ) | |
| DUNCAN MACHINERY MOVERS, INC., | ) | |
| | ) | |
| B&R ELECTRICAL, INC., | ) | |
| | ) | |
| WALSH INDUSTRIAL PIPING, LLC, | ) | |
| | ) | |
| SOUTHEAST KENTUCKY ECONOMIC DEVELOPMENT CORP., | ) | |
| | ) | |
| KENTUCKY HIGHLANDS INVESTMENT CORP., | ) | |
| | ) | |
| APPALACHIAN INVESTMENT CORP., | ) | |
| | ) | |
| ROCKCASTLE COUNTY, KENTUCKY, | ) | |

| | |
|---|---|
| MUELLER ROOFING DISTRIBUTORS, INC., | ) ) ) |
| MARK ONE MACHINERY SALES, LTD., | ) ) ) ) |
| MVP INDUSTRIES, LLC, | ) ) ) |
| UNITED STATES OF AMERICA, SMALL BUSINESS ADMINISTRATION | ) ) ) ) ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiff's Motion to Remand. [R. 14.] Defendants Appalachian Investment Corporation and Kentucky Highlands Investment Corporation each subsequently filed independent motions to remand. [R. 31; R. 40.] Defendant Plasticware's Notice of Removal [R. 1] claimed this Court has diversity jurisdiction, while acknowledging that Kentucky citizens are on both sides of this action. This invocation of diversity jurisdiction is not well-founded. Because the "Kentucky Defendants" (as labeled by Plasticware) are properly aligned as defendants and are real parties in interest, their citizenship is considered when diversity is calculated. This results in the absence of complete diversity. Furthermore, the rule of unanimity in removal was violated because the Kentucky Defendants are real parties in interest. Consequently, the motions to remand will be GRANTED.

**I.**

This action was filed in Rockcastle Circuit Court on June 30, 2011. [R. 1 at 1.] Plaintiff, Citizens Bank, complained that Plasticware defaulted in the repayment of two commercial loans worth over $2 million secured by mortgages on two parcels of real

property. [R. 1, Attach. 6 at 8-18.] Citizens Bank sought an order directing the sale of the parcels and anointing it as the superior claimant for proceeds from the sale. [*Id*. at 24-25.] The notes were also secured by guarantee agreements signed by some of the defendants. [R. 1 at 2-3.] Note one was guaranteed by Shefa Industries, LLC, Adel Assets, LLC, Shifra Holdings, LLC, and Philmet Capital Group, LLC. [*Id*.] Note two was secured by guarantee agreements with Mordechai Neustein, Shefa Industries, Adel Assets, Philmet Capital, and Samuel Meth. [*Id*. at 3.] The Kentucky Defendants were included in this action because they either have liens or mortgages on the real property at issue. [R. 14 at 1-2.]

Defendant Plasticware filed a timely Notice of Removal on August 3, 2011, and Samuel Meth, Shefa Industries, Adel Assets, Shifra Holdings, Philmet Capital joined in this procedural maneuver. [R. 1 at 3, 7.] Plasticware alleges that those defendants, plus Mordechai Neustein (who had yet to be served as of the filing of the notice of removal), constitute the "Actual Defendants."[1] [R. 1 at 3.] Plasticware's removal is premised on 28 U.S.C. § 1332 diversity jurisdiction. [R. 1 at 5-7.] The amount in controversy Plasticware alleges is $83,621.80, clearly surpassing the required $75,000 threshold. [R. 1 at 7.] Plaintiff expressed the amount in controversy by reference to the amount that is due on each of the two notes—$2,313,217.87 on note one and $244,299.81 on note two. [R. 1, Attach 4, at 14, 18.] Regardless of how the precise debt is presented, no party contests that the amount in controversy exceeds $75,000.

Section 1332's requirement of complete diversity on both sides of the action is the point of contention. 28 U.S.C. § 1332(a)(1). Plasticware's Notice of Removal establishes

---

[1] For the sake of clarity, "Actual Defendants" will be used to refer to the Defendants who joined in the notice of removal.

3

that the citizenship of each of the Actual Defendants is in a state other than Kentucky. Plasticware notes that all the members of each LLC are citizens of states other than Kentucky. [R. 1 at 5-6.] Samuel Meth claimed personal citizenship in New York. [R. 1 at 5.] Mordechai Neustein's citizenship was not expressed, but he was identified as a resident of New York.[2] [*Id.*] Citizens Bank, meanwhile, is a Kentucky corporation with a principal place of business in Kentucky. [R. 15 at 3.] Plasticware argues that only the citizenship of the aforementioned parties is relevant to the diversity jurisdiction analysis, and thus, complete diversity is present and federal court jurisdiction is achieved. [R. 1 at 6.]

Two alternative arguments are used to support Plasticware's claim that complete diversity is present, notwithstanding the fact that a Kentucky citizen is the plaintiff and Kentucky citizens are also defendants. First, the individual citizenships of the Kentucky Defendants'—at least some of which are indeed Kentucky ([R. 15 at 3; R. 31 at 3; R. 40, Attach 2 at 1-2])—should be disregarded because those defendants are "nominal." [R. 1 at 6.] Second, Plasticware argues in its Response to the motions to remand, if the citizenships of the Kentucky Defendants are considered, those parties should be realigned for this analysis and examined as if they were plaintiffs. [R. 48 at 4-5.]

Citizens Bank's Motion to Remand addresses the nominal defendant argument and explains that the Kentucky Defendants are real parties in interest who have claims that will be extinguished if not raised in this action. [R. 15 at 4-9.] Appalachian

---

[2] Domicile and citizenship are synonyms in a diversity jurisdiction analysis and are the required touchstones when determining if parties are diverse. *See Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). Residency is often considered the same as one's domicile. *See* 13E Charles Alan Wright et al., *Federal Practice & Procedure* § 3612 (3d ed. 2011). That is not always the case, however, as domicile has both a physical component and an element of intent. *Id*. Citizenship was not established for Neustein, but this order can still be issued because that point becomes irrelevant in light of the Court's holding.

4

Investment Corp.'s Motion to Remand [R. 31, Attach 1 at 3-8] and Kentucky Highlands Investment Corp.'s Motion to Remand [R. 40, Attach 2 at 2-4] make similar assertions on their own behalf. Citizens Bank was the only party to file a Reply and therefore to contest Plasticware's request for realignment of the parties. [R. 54 at 4-6.] Citizens Bank criticizes Plasticware's request because it fails to recognize that at different points during this action the Kentucky Defendants' interests may switch: they may be aligned with Plasticware against Citizens Bank at one point while being ambivalent towards Plasticware but opposing Citizens Bank at another. [R. 54 at 5-6.]

In addition to arguing against Plasticware's arguments, Citizens Bank also posits that Plasticware, LLC's citizenship provides an independent cause for remand. [R. 15 at 10-11.] Citizens Bank claims that Plasticware's principal place of business is in Kentucky, contrary to the facts Plasticware put forth in its Notice of Removal. [*Id*.] Under that factual situation, even if the Actual Defendants' citizenships are the only ones considered, the case should still be remanded.

**II.**

A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction. *See* 28 U.S.C. §§ 1441, 1446. This Court has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between" parties who are "citizens of different states." *See* 28 U.S.C. § 1332(a)(1). Because federal courts are courts of limited jurisdiction, any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313

U.S. 100, 108-109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted). In determining the appropriateness of remand, a court must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal. *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). Further, the defendant bears the burden of showing that removal was proper. *Fenger v. Idexx Laboratories*, 194 F. Supp. 2d 601, 602 (E.D. Ky. 2002) (citations omitted).

In order for diversity jurisdiction to attach, "'all parties on one side of the litigation [must be] of a different citizenship from all parties to the other side of the litigation.'" *Coyne v. Amer. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999) (citations omitted). When removal is based on diversity of the parties, "'[a] defendant desiring to remove a case has the burden of proving the diversity requirements' by a preponderance of the evidence," *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (quotation omitted). Further, "complete diversity" of citizenship must exist both at the time the notice of removal is filed and at the time of commencement of the case. *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (citations omitted). In multiple defendant cases in which removal is sought, "there is a rule of unanimity that has been derived from the statutory language" which requires all defendants to join in the notice of removal or submit a filing to the court consenting to the removal. *Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 516 (6th Cir. 2003) (citations omitted). "Failure to obtain unanimous consent forecloses the opportunity for removal under [28 U.S.C.] § 1446." *Id*.

**A.**

Three arguments were put forth regarding remand—two by Plasticware and one by Citizens Bank. These arguments will be analyzed in reverse order from that in which they were originally presented.

First, Citizens Bank claims that Plasticware should be considered a Kentucky citizen. Citizens Bank contends that Plasticware, LLC's principal place of business is determinative of citizenship, as it is for corporations. 28 U.S.C. § 1332(c)(1). Citizens Bank argues that Plasticware mislabeled its principal place of business as New York in its Notice of Removal [R. 1 at 5] and as Wilmington, Delaware, in its registration with the Kentucky Secretary of State [R. 15 at 10], when in fact, Mt. Vernon, Kentucky is its "nerve center." [R. 15 at 10-11]; *see Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010).

Plasticware's principal place of business, however, is not relevant to its citizenship determination. Plasticware presented that its members were citizens of states other than Kentucky. [R. 1 at 5.] Sixth Circuit precedent holds that "a limited liability company is not treated as a corporation and has the citizenship of its members." *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 F. App'x 731, 732 (6th Cir. 2002); *see also JMTR Enterprises, LLC v. Duchin*, 42 F. Supp. 2d 87, 93 & n.2 (D. Mass. 1999). Plasticware offered that its members are not citizens of Kentucky, and Citizens Bank did not contradict that claim. Thus, Plasticware has proven its citizenship lies outside Kentucky by a preponderance of the evidence, and it and Citizens Bank are diverse.

### B.

Plasticware recognizes that the current posture of this case prevents removal, yet it argues that diversity exists when the parties are "aligned according to their interests in

the litigation." *Cleveland Housing Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010); *see also Safeco Ins. Co. v. City of White House*, 36 F.3d 540, 545 (6th Cir. 1994) ("Realignment, then, may create or destroy diversity jurisdiction." (citations omitted)). *Cleveland Housing* is utilized to demonstrate that this Court has the "responsibility to ensure that the parties are properly aligned according to their interests in the litigation" and the alignment should be configured "in accordance with the primary dispute in the controversy, even where a different, legitimate dispute . . . supports the original alignment." *Cleveland Housing*, 621 F.3d at 559 (internal quotation marks and citations omitted). Thus, this Court first needs to discern the primary dispute in this controversy. Then, the parties need to be aligned around that primary dispute according to their interests. *See United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992); *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 69-70 (1941).

Plasticware alleges that the primary dispute is "foreclosure on the property in question and the satisfaction of the parties' respective liens and mortgages." [R. 48 at 5.] Under that scenario, Plasticware labels Citizens Bank and the Kentucky Defendants as "Plaintiffs" and itself and the Actual Defendants as "Defendants." [*Id.*] This is appropriate because Citizens Bank is not seeking relief from any of the Kentucky Defendants and some of the Kentucky Defendants have cross-claimed against Plasticware.[3] [*Id.*] As outlined above, this placement would result in complete diversity and fall within this Court's jurisdiction.

---

[3] *Cleveland Housing* is used as support for both of Plasticware's contentions. [R. 48 at 4-5.] The Sixth Circuit cited both of those factors as indicators that Defendant City of Cleveland should be realigned and considered a Plaintiff. *Cleveland Housing*, 621 F. 3d at 559-60. Those factors, however, were merely parts of the court's calculus in determining that the City of Cleveland should be realigned. The court found the

Citizens Bank uses the primary dispute as described by Plasticware and partitions it: "part of the primary dispute in the controversy in a foreclosure proceeding is whether the plaintiff's mortgage is valid," while another part is "whether [plaintiff's mortgage] has priority over the junior lienholders and mortgagees." [R. 54 at 5.] In the first part of the dispute, Citizens Bank claims that the Kentucky Defendants will seek to aid Plasticware in assailing the validity of the mortgage. [*Id.*] In the second part of the dispute, the Kentucky Defendants will attempt to show that their claims are superior to Citizens Bank's claim. [*Id.*]

The Court agrees with Citizens Bank's position that there are two distinct disputes in this action. Dispute number one is between Citizens Bank and Plasticware and is focused on whether Plasticware defaulted on two notes it owed to Citizens Bank that were secured by real property. (A sub-part of that controversy concerns the loan guarantees given by the Actual Defendants.) Dispute number two is a priority battle between Citizens Bank and the Kentucky Defendants over Plasticware's assets (and possibly those of the Actual Defendants). This controversy is, of course, dependent on a finding that Plasticware is in default and its assets are subject to sale.

In ascertaining the "primary dispute," the Supreme Court has instructed that the "principal purpose of the suit and the primary and controlling matter in dispute" should govern. *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 69-70 (1941) (internal citations and citations omitted). Similarly stated, but especially applicable in this case, the Sixth Circuit wrote: "despite the fact that there may be actual and substantial ancillary or secondary issues to the primary issue, the parties should be aligned in accordance with

---

nature of the nuisance suit and the benefits the City of Cleveland would obtain if the original plaintiff prevailed to be far more persuasive. *Id*.

the primary issue in an action." *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992). Those guideposts lead the Court to find that dispute number one—focused on the foreclosure of the property, validity of the mortgage, and related issues—is the primary dispute in this action. Only if dispute number one is resolved in Citizens Bank's favor is dispute number two contested. One case supports this finding, although no case directly on point was either cited by the parties or found by the Court.

*United States v. Scholnick*, 606 F.2d 160 (6th Cir. 1979), as quoted by Plasticware, offers similar support. "A suit to foreclose a mortgage is a proceeding to determine the existence, extent, and priority of a mortgage lien and to obtain the sale of the real property pledged to secure its satisfaction." *Id.* at 165 (citation omitted). Before Citizens Bank and/or other potential claimants begin to divide Plasticware's assets, *Scholnick* explains that the existence (and validity) of the mortgage must be proven. The Kentucky Defendants are incentivized to oppose finding that the mortgage is valid and, hence, do not have similar interests to Citizens Bank with regard to the primary dispute. In fact, the Kentucky Defendant's interests are in lockstep with Plasticware's at that stage of the litigation.[4]

---

[4] *Lennox v. Caicedo Yusti*, 172 F.R.D. 617, 624 (D.P.R. 1997) also puts forth persuasive dicta that supports labeling dispute number one as the primary dispute. In that case, one creditor was suing a debtor to foreclose on a mortgage. *Id.* Another creditor who had already obtained a judgment against the same debtor for the same property sought to intervene and obtain a declaratory judgment regarding priority between the two creditors. *Id.* In the midst of analyzing whether intervention would be permitted, for it could impact the court's diversity jurisdiction, the court opined about primary disputes. *Id.* It noted: "The question whether a dispute is primary or secondary depends not on its complexity, but rather on its logical primacy. In this sense, the dispute as to priority is logically secondary to, because dependent on, the dispute as to the debt itself." *Id.*

It should be noted that the *Lennox* court offered two reasons for denying the motion to intervene. One reason was due to the decision that the primary dispute was over the actual foreclosure. The second reason was that if the party seeking to intervene was allowed into the action that party would have been aligned with the other creditor and complete diversity would not have been present. An important distinction between that case and this case, however, is that the party seeking to intervene had already

The two-step realignment analysis leads to the conclusion that the parties are properly aligned here. The issue of priority can only be addressed after the foreclosure issue has been resolved. Plasticware's request to realign the parties is denied and complete diversity is not present.

## C.

Plasticware's second argument in support of its claim that diversity is present is that the Kentucky Defendants are "nominal defendants." The Supreme Court instructed that the citizenship of nominal defendants should be disregarded when determining whether parties' citizenships are diverse. *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 461 (1980). Moreover, real defendants can properly remove a case without joining nominal defendants or seeking their consent. *Local 172, International Ass'n of Bridge, Structural Ornamental, and Reinforcing Ironworkers v. P.J. Dick, Inc.*, 253 F. Supp. 2d 1022, 1027 (S.D. Ohio 2003) (noting that a co-defendant's consent was not sought because that defendant was believed to be nominal). Defining "nominal" and properly assigning that designation are this argument's pivotal inquiries.

## 1.

The Sixth Circuit labeled a nominal party as "one who has no interest in the result of the suit and need not have been made a party thereto." *Maiden v. North American Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004) (citation and internal quotation marks omitted). Plasticware cited several cases which defined nominal defendant, one of which is similar to the Sixth Circuit's definition and useful here: "defendants are nominal parties [if their] addition was a mere gesture" or "they have no legal interest in the

---

obtained a judgment in Commonwealth court against the debtor. *Id*. In this case, the position of each Kentucky Defendant is not crystalized in that way.

11

action." *U.S. Fire Ins. Co. v. Charter Financial Group, Inc.*, 851 F.2d 957, 959 n.3 (7th Cir. 1988). [R. 1 at 4.] In applying those principles to the facts of this case, the Court finds that the Kentucky Defendants are not nominal.

## 2.

Kentucky's substantive law governs this case because federal jurisdiction is premised on diversity. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Kentucky law is also determinative of the "underlying legal relationship between the parties, upon which the identity of the real party in interest depends." *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1094 (9th Cir. 2004) (quoting *Glacier General Assurance Co. v. Symons*, 631 F.2d 131, 133 (9th Cir. 1980) (internal quotation marks omitted)). Because Kentucky law requires the Kentucky Defendants to protect their economic interests in Plasticware's assets in this suit or see them forfeited, the Kentucky Defendants are real parties in interest.

Kentucky Revised Statute (KRS) § 426.006 requires a party who seeks to foreclose on property to name in the complaint all parties who also hold liens on the subject property. *See also PNC Bank v. Citizens Bank of Northern Kentucky*, 139 S.W.3d 527, 528 (Ky. Ct. App. 2003). Parties named as defendants must file an answer or cross claim. KRS § 426.006. Non-responding parties are barred from obtaining any proceeds of a sale. *Id.*; *see also Conseco Finance Servicing Corp. v. Hurstborne Healthcare, LLC*, 2004 WL 2755850, at *1 (Ky. Ct. App. 2004). In *PNC Bank*, a party neglected to respond, and that party was barred from receiving funds from a foreclosure sale. *PNC Bank*, 139 S.W.3d at 531; *see also Conseco Finance Servicing Corp.* 2004 WL 2755850. The Sixth Circuit's definition of a nominal defendant—"one who has no interest in the

12

result of the suit and need not have been made a party thereto"—is inapposite in the face of such facts. *Maiden v. North American Stainless, L.P.*, 125 F. App'x 1, 3 (6th Cir. 2004) (citation and internal quotation marks omitted).

**3.**

Plasticware cites *Kirklevington Associates v. Kirklevington North Associates*, 848 S.W.2d 453 (Ky. Ct. App. 1993) in its Response [R. 52 at 3-4] for the purpose of analogizing those facts with the facts present here. The Court, however, does not find that a comparison can be drawn from *Kirklevington*.

The issue in *Kirklevington*, as stated by the court, was whether "the former owner of property sold in a foreclosure action possessed the sole right to redeem the property pursuant to [KRS § 426.530]." *Kirklevington*, 848 S.W.2d at 454. The court proceeded to examine KRS § 426.530 (describing who has the right of redemption and the process of redeeming), in part by distinguishing it from KRS § 426.006 (instructing plaintiff how to enforce a lien when other claimants exist), and concluded that the term "defendant" in each subsection meant something different. *Kirklevington*, 848 S.W.2d at 454-55. One of the justifications given for that decision was that "Kentucky decisions involving the redemption statute have, apparently without exception, discussed the right of redemption solely in relation to the owner of the property." *Id.* at 455. Furthermore, the court noted that the Kentucky legislature purposely refrained from granting all lienholders a right of redemption because if it desired otherwise it "certainly would have provided a mechanism to establish priority among holders of competing rights." *Id.*

Plasticware's *Kirklevington*-based argument seems to be that because junior lienholders do not have a right of redemption, and thus relatively unimportant in that

13

process, junior lienholders are also unimportant in the foreclosure process—they are nominal. There are two reasons why Plasticware's arguments based on *Kirklevington* are unconvincing. First, the *Kirklevington* court painstakingly analyzed the specific statute at issue—KRS § 426.530—and based its decision on the statutory history of the redemption statute and related case law. This restricts the general applicability of the legal principles put forth. In other words, the *Kirklevington* court decided that "defendant" as used in KRS § 426.530 had a restrictive meaning. *Kirklevington*, 848 S.W.2d at 455. That decision has little or no impact on the way "defendant" is defined in myriad other statutes, including KRS § 426.006. Accordingly, the Court is unwilling to transfer the conclusion from *Kirklevington* to this case.

Second, *Kirklevington* is about the status of junior lienholders in redemption proceedings. The issue in this case is about the status of junior lienholders in foreclosure proceedings. Although there is a transactional link between these proceedings, they exist for very different reasons, and the purpose of the proceedings impacts the status of junior defendants. Foreclosure proceedings "determine the existence, extent, and priority of a mortgage lien." *United States v. Scholnick*, 606 F.2d 160, 165 (6th Cir. 1979). Foreclosure litigation exists to provide a stage on which parties can sort out their respective economic interests. Named defendants must involve themselves in foreclosure proceedings or risk missing out on proceeds that might arise from the sale of foreclosed property. *See* KRS § 426.006.

Meanwhile, in a redemption proceeding, the defendant, i.e., the mortgagor, can reclaim ownership over real property after a foreclosure proceeding by paying the original debt (and additional charges as necessary). 55 Am. Jur. 2d *Mortgages* § 787

14

(2011). As explained in *Kirklevington*, this is a statutory right bound by the words of the statute. *See Kirklevington*, 848 S.W. 2d at 454-55. Furthermore, the right of redemption is typically limited to "any person having an interest in or lien on the land, provided that he or she comes in privity with the mortgagor." 55 Am. Jur. 2d *Mortgages* § 794 (2011). By its structure, then, a redemption proceeding is a proceeding whereby one party can pay off a debt and reassert ownership. Rather than the multi-actor drama of a foreclosure proceeding, a redemption proceeding is usually a one-person play.

**D.**

In light of the facts presented here, the Court finds that Plasticware's removal is improper. The Kentucky Defendants are properly aligned as defendants; and the Kentucky Defendants are real parties in interest. Hence, their citizenships are considered in the 28 U.S.C. § 1332 diversity analysis and diversity is not present here. Furthermore, as a result of the Kentucky Defendants being real parties in interest, their consent is needed to satisfy the rule of unanimity in removal. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999); *see also Loftis v. United Parcel Service, Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). At least one of the Kentucky Defendants neither joined in the notice of removal nor filed written consent to removal with the Court. [R. 31, Attach 1 at 3.] For the aforementioned reasons, this case must be remanded to Rockcastle Circuit Court.

**III.**

For the reasons stated herein, and pursuant to 28 U.S.C. § 1447(c) and 28 U.S.C. § 1446(a), as elucidated by subsequent case law, it is hereby **ORDERED** as follows:

1. The Plaintiff's Motion to Remand [R. 14] is **GRANTED**:

15

2. This action is **REMANDED** in its entirety to the Rockcastle Circuit Court from which it was removed.

3. This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

This the 17th day of November, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge